UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **MELANIE COSTA,**<br><br>Plaintiff,<br><br>v.<br><br>**ZURICH AMERICAN INSURANCE COMPANY, NATIONAL FIRE & MARINE INSURANCE COMPANY,** and **THE HARTFORD ACCIDENT AND INDEMNITY COMPANY,**<br><br>Defendants. | Case No. 23-cv-11594-DJC |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                                                             **March 13, 2024**

## I.   Introduction

Plaintiff Melanie Costa ("Costa"), individually and as a personal representative for the estate of Anthony Costa, Jr. ("Mr. Costa"), has filed this lawsuit against Defendants Zurich American Insurance Company ("Zurich"), National Fire & Marine Insurance Company ("National Fire") and the Hartford Accident and Indemnity Company ("Hartford") (collectively, the "Insurers").  Against all the Insurers, Costa alleges violations of Mass. Gen. L. c. 93A and 176D (Counts I, IV and VII), and against Zurich and National Fire, Costa alleges violations of Mass. Gen. L. c. 175, § 112C (Counts II and V) and breach of contract (Counts III and VI).  D. 26.  The Insurers have moved to dismiss the amended complaint.  D. 27; D. 34; D. 43.  For the reasons stated below, the Court DENIES Hartford's motion to dismiss, D. 27, ALLOWS Zurich's motion to dismiss in part and DENIES it in part, D. 34, and ALLOWS National Fire's motion to dismiss, D. 43.

1

II.   **Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted). "Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)." Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008) (internal quotation marks and citation omitted).

III.   **Factual Background**

The Court draws the following factual allegations from the amended complaint, D. 26, and attached exhibits, and accepts them as true for the purpose of resolving the motions to dismiss.

  A.   **The Accident and Underlying Lawsuit**

On or about February 28, 2019, Mr. Costa was fatally injured in a workplace accident when approximately 1,500 pounds of steel that had been improperly rigged to a crane fell on him from four stories above (the "Accident"). D. 26 ¶¶ 1, 7, 33e. Costa, Mr. Costa's widow, filed suit on or about February 28, 2020 against G & C Concrete Construction, Inc. ("G&C") and Maxim Crane

2

Works, L.P. ("Maxim") (collectively, the "Insured") for wrongful death (the "Underlying Lawsuit"). Id. ¶ 11.

Hartford insured G&C under a general liability policy with a coverage limit of $20,000,000 per occurrence. Id. ¶ 12. Zurich insured Maxim as the primary insurer under a general liability policy with a coverage limit of $5,000,000 per occurrence, id. ¶ 13, and National Fire provided Maxim with excess coverage at a limit of $10,000,000 above Zurich's policy limit. Id. ¶ 14.

### B. Investigation

Zurich received notice of the Accident no later than March 1, 2019 and learned that Maxim had retained counsel and experts who were investigating the Accident in anticipation of litigation. Id. ¶¶ 19-20. National Fire received notice of the Accident no later than April 26, 2019. Id. ¶ 48. During the Occupational Safety and Health Administration's ("OSHA") investigation of the Accident, Maxim misrepresented to OSHA that at the time of the Accident, Adam Anderson ("Anderson"), an apprentice, was operating the crane under the direct supervision and immediate presence of Christopher Brockway ("Brockway"), the certified crane operator. Id. ¶ 10. Brockway's cellphone records, however, revealed that he had been twenty miles away from the insured crane at the time of the Accident. Id. ¶ 33e.

As alleged, Zurich delayed making any offer of settlement and failed to conduct its own investigation of the Accident, relying instead on Maxim's investigation, even after learning that Maxim had falsely reported that a certified operator was present at the time of the Accident. Id. ¶¶ 20, 33f. National Fire was aware that Zurich had not performed its own reasonable claims investigation and that Zurich had no independent basis to assess Maxim's liability. Id. ¶ 50. National Fire's management knew that National Fire needed to conduct a thorough investigation into liability damages, yet it failed to do so even after Zurich expressed a willingness to pay its full coverage limit. Id. ¶¶ 49, 51. Instead, National Fire relied upon Maxim's investigation despite

3

knowing that Maxim concealed the fact that an unsupervised apprentice had been operating the crane alone at the time of the Accident.  Id. ¶¶ 49, 51.  Both Zurich and National Fire failed to correct this misrepresentation to Costa and to the Middlesex Superior Court.  Id. ¶¶ 33i, 67g.  Hartford received notice of the Accident and of G&C's involvement around March 1, 2019, but it, too, allegedly failed to conduct an adequate investigation.  Id. ¶¶ 83-84.

   **C.** **Settlement Negotiations**

On February 1, 2022, nearly three years after Mr. Costa's death, Zurich and Hartford made their first settlement offer of $500,000 each.  Id. ¶¶ 23, 87.  On June 1, 2022, the Insurers, the Insured and Costa participated in a mediation.  Id. ¶¶ 24, 88.  At this mediation, Maxim, National Fire and Zurich offered Costa $1,200,000 to settle all of her claims against Maxim, id. ¶ 24, and Hartford offered $1,200,000 on behalf of G&C, id. ¶ 88.  At a second mediation on September 20, 2022, a global offer of $11,800,000 was extended on behalf of both Maxim and G&C.  Id. ¶¶ 26, 89.  On or before this same day, National Fire became aware that Zurich planned to offer the remainder of its primary policy limit, which had been significantly reduced by settlements with other claimants.  Id. ¶¶ 25, 58.  A few days later, the global offer of $11,800,000 was increased to $12,000,000.  Id. ¶¶ 26, 89.

   **D.** **Mass. Gen. L. c. 93A and Mass. Gen. L. c. 176D Demand**

On October 26, 2022, Costa, pursuant to Mass. Gen. L. c. 93A and Mass. Gen. L. c. 176D, forwarded a written demand to Hartford requesting its full policy limit.  Id. ¶ 90.  In response, Hartford denied all allegations and did not extend an additional offer.  Id. ¶ 91.  On April 26, 2023, Costa forwarded a supplemental demand under the same Massachusetts laws, asserting that recent depositions of G&C's employees had provided overwhelming evidence that G&C's liability was reasonably clear immediately after the Accident.  Id. ¶ 92.  At this point, Costa made a demand to settle Hartford's alleged Mass. Gen. L. c. 176D liability for $3,250,000.  Id.  Hartford, again,

denied all allegations and reiterated its prior offer of $5,000,000 to resolve G&C's liability.  Id. ¶ 93.

On January 20, 2023, Costa, also pursuant to Mass. Gen. L. c. 93A and Mass. Gen. L. c. 176D, forwarded a written demand to Zurich and National Fire requesting their combined full policy limit of $15,000,000.  Id. ¶ 28.  On February 9, 2023, Zurich and National Fire separately denied all allegations and did not extend additional offers.  Id. ¶¶ 29, 62.

### E.   Agreement to Settle

On June 16, 2023, Costa wrote an email to Maxim bearing the subject line "Agreement to Settle," which stated:

> My client will accept your last offer of $7,250,000 to settle the claims against Maxim, excluding all claims against Maxim's insurers under c. 93A/176D, after the court's decision on our motion for sanctions, scheduled for hearing on June 30, 2023, arising out of the subpoenas to Maxim's insurers Zurich and National Fire.  As part of the general release of Maxim, we will agree that any and all sanctions that enter against Maxim will be enforced only against Maxim's insurer(s).

Id. ¶¶ 30, 64; D. 26-3 at 2.  Maxim responded with the following email:

> Thank you for your email below concerning "Agreement to Settle." This email will confirm that Maxim and its insurers hereby accept your settlement proposal set forth below.
>
> I am pleased that we have been able to settle this matter and resolve all claims against Maxim. I will draft a release for your review.

D. 26 ¶¶ 31, 65; D. 26-3 at 2.  At a June 30, 2023 hearing in state court, Zurich and National Fire allegedly instructed Maxim's counsel to represent to the court that the parties had already settled, thereby eliminating the need for a hearing on the sanctions motion.  D. 26 ¶¶ 45a, 79a.

### IV.   Procedural History

Costa filed this action in Middlesex Superior Court on June 16, 2023, D. 1-1, and the Insurers removed this action to this Court on July 14, 2023.  D. 1.  The Insurers have now moved

5

to dismiss.[1]  D. 27; D. 34; D. 43.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 62.

V.    Discussion

    A.    **Hartford's Motion to Dismiss (Count VII)**

        *1.    Statute of Limitations*

Hartford argues that Costa's claims against it are time barred.  D. 28 at 9.  On a Rule 12(b)(6) motion, the Court will only dismiss on the basis of an affirmative defense, such as a statute of limitations defense, where "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings,'" Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009) (alteration in original) (quoting Trans-Spec Truck Serv., Inc., 524 F.3d at 320), including the complaint "and any other properly considered documents."  Abdallah v. Bain Capital LLC, 752 F.3d 114, 119 (1st Cir. 2014).  Costa asserts a Chapter 93A claim against Hartford arising out of violations of Chapter 176D for unfair claim settlement practices.[2]  Specifically, Costa alleges that Hartford failed to conduct a timely and reasonable claims investigation and failed to effectuate a prompt, fair and equitable settlement once G&C's liability had become reasonably clear.  D. 26 ¶¶ 94-95.

---

[1] The Court allows Hartford's motion to file a reply brief, D. 40, and Costa's motion to file a sur-reply brief, D. 57, *nunc pro tunc*, and has considered these briefs, D. 41, 57-1, in the resolution of Hartford's motion.  The Court also allows Zurich's motion to file a reply brief, D. 56, *nunc pro tunc*, and has considered the reply brief, D. 56-1, in the resolution of Zurich's motion.

[2] "Chapter 176D does not provide a separate cause of action," but "[a] Chapter 93A violation . . . can arise from violations of Chapter 176D."  Morin v. Metro. Prop. & Cas. Ins. Co., No. 16-10687-LTS, 2016 WL 9053346, at *2 (D. Mass. June 7, 2016) (citations omitted).

Claims for violations of Mass. Gen. L. c. 93A and c. 176D are subject to a four-year limitations period. Mass. Gen. L. c. 260 § 5A.[3] A "chapter 93A claim accrues 'at the time injury results from the assertedly unfair or deceptive practice.'" John Beaudette, Inc. v. Sentry Ins., 94 F. Supp. 2d 77, 110 (D. Mass. 1999) (quoting Cambridge Plating Co. v. NAPCO, Inc., 991 F.2d 21, 25 (1st Cir. 1993)). Under the discovery rule, "the limitations period is tolled until 'events occur or facts surface which would cause a reasonably prudent person to become aware that she or he had been harmed.'" Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006) (quoting Felton v. Labor Rel. Comm'n, 33 Mass. App. Ct. 926, 928 (1992)). This discovery must include two components: "knowledge that one has been injured" and "knowledge of its cause – that plaintiff 'has been harmed as a result of the defendant's conduct.'" Fidler v. Eastman Kodak Co., 714 F.2d 192, 198 (1st Cir. 1983) (quoting Olsen v. Bell Tel. Lab'y, Inc., 388 Mass. 171, 175 (1983)).

Behn v. Legion Ins. Co., 173 F. Supp. 2d 105 (D. Mass. 2001) is instructive. There, the court concluded that plaintiffs' Chapter 93A/176D claims were not barred by the statute of limitations. Id. at 112. The court reasoned that although plaintiffs alleged in their pleadings that liability in the underlying action became reasonably clear on May 10, 1994, the statute of limitations "does not begin to run until the plaintiff knew or should have known of appreciable harm resulting from the defendant's actions." Id. (citation omitted). In the Chapter 93A/176D

---

[3] The Supreme Judicial Court issued an order tolling all civil statutes of limitations from March 17, 2020 through June 30, 2020 due to the COVID-19 pandemic; this tolling period applies to "all causes of action for which the relevant limitations period ran for some period between, or through, those dates." Shaw's Supermarkets, Inc. v. Melendez, 488 Mass. 338, 345 (2021). The time period between March 17, 2020 and June 30, 2020, inclusive of both the start and end dates, amounts to 106 days so the SJC order "effectively added an additional 106 days to the limitations period for any claim that had not expired by March 17, 2020." Kaiser v. Kirchick, 662 F. Supp. 3d 76, 94 (D. Mass. Mar. 15, 2023).

7

context, such claims "arise from [the insurer's] behavior from the time it learned of this allegedly clear liability and its failure to take subsequent action." Id. at 113. Given that the plaintiffs "were not aware that the insurance company had no intention of paying their claim until after [the insurer] failed to respond to their settlement demand in September, 1995," the Chapter 93A/176D claim would not be barred until four years from that discovery. Id.

Hartford argues that Costa's claim accrued as of March 1, 2019, the date that, as alleged, Hartford first received notice of the involvement of its insured, G&C, in the Accident, D. 28 at 9, and therefore, her Chapter 93A/176D claim asserted in this case initiated on June 16, 2023, D. 1-1, is time barred. But this statute of limitations defense is not clear on its face since it is not plausibly alleged that Costa both knew of a Chapter 93A/176D injury and had been injured by Hartford's failure to investigate or make a reasonable settlement offer. Such claim would have accrued when Costa became aware of Hartford's unfair or deceptive practice, namely its refusal to investigate her claim and thereafter provide a settlement offer. See Behn, 173 F. Supp. 2d at 112-13; cf. Schwartz v. Travelers Indem. Co., 50 Mass. App. Ct. 672, 677-79 (2001) (concluding that the Chapter 93A and Chapter 176D claims were time-barred because plaintiff "knew, or should have known," prior to the defendant's denial of his insurance claim, that an "inadequate investigation of his claim . . . had occurred" when the insurance adjuster failed to properly inspect the premises to assess the damages and expressed her impression that there was no evidence of damages that would be covered under the policy). It is not clear from the pleadings when Costa learned that Hartford had not investigated her claim. As to any settlement offer, Costa forwarded a Settlement Demand Letter to G&C on October 29, 2021, but received no response from Hartford, D. 26 ¶ 87; D. 26-11 at 16; D. 26-10, and it made its first settlement offer on February 2, 2022. D.

8

26 ¶ 87.  On this record, the Court cannot conclude that Costa's Chapter 93A/176D claim against Hartford is time barred.

Accordingly, the Court denies Hartford's motion to dismiss.[4]

### B. Mass. Gen. L. c. 93A and 176D Claims (Counts I and IV)

#### 1. Mass. Gen. L. c. 93A and 176D Claim Against Zurich (Count I)

Against Zurich, Costa also asserts a Chapter 93A claim arising from alleged violations of Chapter 176D for unfair claim settlement practices.  Costa alleges that Zurich failed to conduct a timely and reasonable claims investigation and failed to effectuate a prompt, fair and equitable settlement once the liability of its insured, Maxim, had become reasonably clear.  D. 26 ¶¶ 20, 22-23, 33.  To state a claim under Chapter 93A for a violation of Chapter 176D, Costa must allege that "(1) an unfair or deceptive act or practice has been committed; and (2) that the commission of that act or practice has caused [her] an injury within the meaning of Chapter 93A, § 9(1)."  Aquino v. Pacesetter Adjustment Co., 416 F. Supp. 2d 181, 192 (D. Mass. 2005).  Chapter 176D defines unfair or deceptive act to include, among other things, "unfair claim settlement practices."  Mass. Gen. L. c. 176D, § 3(9).  Chapter 176D, § 3(9) lists several acts or omissions that constitute unfair claim settlement practices.  See Mass. Gen. L. c. 176D, § 3(9).

Zurich argues that Costa's Mass. Gen. L. c. 93A and 176D claim should be dismissed because Costa's Chapter 93A demand letter solely demanded Zurich's policy limits as relief,

---

[4] Costa seeks sanctions against Hartford pursuant to Fed. R. Civ. P. 11(c)(2) for filing its motion to dismiss, which she contends was "not well grounded in fact or law."  D. 38 at 11.  Under Rule 11, a court may "impose sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose."  CQ Int'l Co. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 60 (1st Cir. 2011).  "The mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions."  Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P., 171 F.3d 52, 58 (1st Cir. 1999).  Hartford's interpretation of the allegations in the complaint are not so unreasonable as to warrant the imposition of sanctions or an assumption that it brought the motion in bad faith.  Accordingly, the Court denies Costa's motion for sanctions.

which Zurich argues it had already tendered prior to Costa's Chapter 93A demand. D. 34 at 1. Chapter 93A requires that a plaintiff send a letter to the prospective defendant "[a]t least thirty days prior to the filing of any [Chapter 93A] action . . . identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." Mass. Gen. L. c. 93A, § 9(3). This "statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" Rodi v. S. New Eng. Sch. of L., 389 F.3d 5, 19 (1st Cir. 2004) (quoting Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 813 (1975)). The purpose of the pre-suit demand letter is "to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct" and "to operate as a control on the amount of damages which the complainant can ultimately recover if he proves his case." Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 505 (2011) (internal citation and quotation marks omitted). Under Chapter 93A, "[a]ny person receiving [a chapter 93A] demand for relief who . . . makes a written tender of settlement which is rejected by the claimant may, in any subsequent action . . . limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner." Mass. Gen. L. c. 93A, § 9(3). Such tender would limit recovery for such a claim. Id.; see Hermida v. Archstone, 950 F. Supp. 2d 298, 305 (D. Mass. 2013) (stating that "[a] plaintiff's recovery under Chapter 93A 'may not exceed the relief tendered' by the defendant, so long as the settlement offer is reasonable") (quoting Kohl v. Silver Lake Motors, Inc., 369 Mass. 795, 797 (1976)).

Here, Zurich neither argues that Costa failed to send a Chapter 93A demand letter nor seeks to limit recovery to any relief tendered in response to Costa's Chapter 93A demand. Instead, Zurich argues that Costa's Chapter 93A claim should be dismissed because Zurich had previously tendered the relief sought by Costa, namely Zurich's full policy limit, as part of its settlement offer

10

in the Underlying Lawsuit. That is, however, not a basis for dismissal at this juncture. "In the insurance context, claims for coverage and claims for violations of Chapter 93A offer 'distinct avenues for relief,'" Hache v. AIG Claims, Inc., No. 20-10652-PBS, 2021 WL 8999589, at *9 (D. Mass. Oct. 26, 2021) (quoting Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 822 n.14 (2014)), such that "the resolution of an underlying insurance claim 'does not necessarily resolve the associated c. 93A claims, as those claims allow a plaintiff to remedy the separate harm caused by the insurer's unfair settlement practices.'" Id. (quoting Chiulli v. Liberty Mut. Ins., Inc., 97 Mass. App. Ct. 248, 254 (2020)).

In Clegg v. Butler, 424 Mass. 413 (1997), the parties in the underlying lawsuit entered a settlement agreement, which did not include the plaintiffs' allegations of unfair settlement practices by the insurer. See Clegg, 424 Mass. at 416. The insurer claimed that because the parties entered the settlement in the underlying lawsuit, the plaintiffs "were not adversely affected or injured by [the insurer's] actions." Id. at 419. The court explained the distinct injury that a Chapter 93A/176D claim seeks to remedy that cannot be captured by a settlement or judgment in the underlying suit: "[w]hether a settlement is eventually reached or not, unjust delay subjects the claimant to many of the costs and frustrations that are encountered when litigation must be instituted and no settlement reached. Moreover, when an insurer wrongfully withholds funds from a claimant, it is depriving that claimant of the use of those funds. 'This is precisely the type of damage we have described as appropriately being subject to multiplication in an action . . . under c. 93A.'" Id. (quoting Schwartz v. Rose, 418 Mass. 41, 48 (1994)).

Similarly here, Zurich's prior offer to settle the Underlying Lawsuit may be a limit to Chapter 93A/176D recovery, but only if it is determined to be reasonable as to the Chapter 93A/176D harm suffered. Mass. Gen. L. c. 93A, § 9(3). But that cannot be determined here at

11

this juncture and, as alleged, in response to Costa's Chapter 93A demand, Zurich "denied all allegations and otherwise did not extend an additional offer." D. 26 ¶ 29. Accordingly, the Court denies Zurich's motion to dismiss, D. 34, as to Count I.

        2.     *Mass. Gen. L. c. 93A and 176D Claim Against National Fire (Count IV)*

Costa also asserts a Chapter 93A claim against National Fire arising out of violations of Chapter 176D for unfair claim settlement practices. Similar to her claim against Zurich, Costa alleges that National Fire has committed an unfair settlement practice by failing to conduct a timely and reasonable claims investigation and failing to effectuate a prompt, fair and equitable settlement once Maxim's liability had become reasonably clear. D. 26 ¶¶ 51, 54, 56, 67.

National Fire argues that, as the excess insurer, it owed no duty to Costa until Zurich, the primary insurer, tendered its policy limit. D. 44 at 8. As to an insurer's duty to effectuate a prompt settlement under Mass. Gen. Laws Ch. 176D § 3(9)(f), where a primary and an excess insurer are involved, "an excess insurer generally is not subject to the fair and prompt settlement obligations of Mass. Gen. Laws Ch. 176D § 3(9)(f) until the primary insurer has acted." Wahlstrom v. Zurich Am. Ins. Co., No. 19-12208-LTS, 2022 WL 20416913, at *3 (D. Mass. Aug. 17, 2022) (quoting Mut. Ins. Co. v. Murphy, 630 F. Supp. 2d 158, 164 (D. Mass. 2009)); see Clegg, 424 Mass. at 421 n.8 (explaining that the excess insurer had "no reason to examine or determine the extent of its liability" until the primary insurer "was prepared to address the possibility that the [plaintiffs] were entitled to its policy limits," since an "excess insurer has no obligation or incentive to make an explicit commitment until the primary insurer has acted"); Rhodes v. AIG Domestic Claims, Inc., No. 05-1360-BLS1, 2008 WL 2357015, at *21 (Mass. Super. June 3, 2008) (concluding that the excess insurer "had no duty to 'examine or determine the extent of its liability' because . . . the primary insurer[] had not yet indicated that it was prepared to tender its policy limits"), aff'd as modified, 78 Mass. App. Ct. 299 (2010), aff'd, 461 Mass. 486 (2012).

Costa contends that she "does not know when or how Zurich communicated its views on tender to National Fire," and thus, she claims, "the date of the tender is disputed." D. 50 at 15. As alleged, however, on or before September 20, 2022, Zurich advised National Fire that the remainder of its full policy limits was available for settlement, D. 26 ¶ 25, and National Fire became aware that Zurich planned to offer the remainder of its primary policy limit. Id. ¶ 58. Costa also alleges that National Fire admitted to being involved in settlement negotiations from at least September 2022. Id. ¶ 63. The complaint alleges that on or about September 20, 2022, "a global offer of $11,800,000 was extended on behalf of both Maxim and G & C," which, "[w]ithin days," was "increased to $12,000,000." Id. ¶ 59. As attached and incorporated into the amended complaint, Zurich offered its full policy limit on September 20, 2022, during the second mediation, D. 26-2 at 2, at which point National Fire became involved in the settlement negotiations, Id. ¶¶ 25, 58,[5] and made an offer of its own within days of Zurich's tender. See id. ¶¶ 25-26. Accordingly, the Court allows the motion to dismiss as to any claim against National Fire arising out of a violation of Chapter 176D § 3(9)(f) for failure to effectuate a prompt settlement.

Costa argues that the "no tender/no duty" rule does not apply to all claims under Chapter 176D.[6] D. 50 at 13. It appears, however, to extend to the duty to investigate as the court in Clegg reasoned that the excess insurer "had no reason to know that it would be required to provide compensation from its policy to the [plaintiffs], and thus no reason to examine or determine the

---

[5] In her complaint, Costa alleges that National Fire "admits" to being involved in the settlement negotiations from at least September 20, 2022 through on or about June 16, 2023. D. 26 ¶ 63.

[6] In her opposition to National Fire's motion to dismiss, Costa acknowledges that the "no tender/no duty" rule applies to the duty to settle under Mass. Gen. L. c. 176D, § 3(9)(f). See D. 50 at 12. She notes that Rhodes, Murphy and Wahlstrom, discussed above, establish that the date of tender is "the starting date for an excess insurer's liability" under Mass. Gen. L. c. 176D§ 3(9)(f), but argues that these cases do not "stand for the proposition that tender impacts any other basis for an insurer's liability" under Mass. Gen. L. c. 93A or 176D. D. 50 at 14.

extent of its liability." Clegg, 424 Mass. at 421 n.8.  Determining and examining the extent of liability requires an investigation into the potential liability of the insured.  Per that logic, National Fire could not have been expected to engage in an investigation of its own until it was clear that Zurich intended to tender its full policy limits.  To the extent that Costa alleges a violation of Chapter 176D § 3(9)(c) or (d) against National Fire for failure to investigate prior to Zurich's offer of its full policy limit, the Court allows National Fire's motion to dismiss, D. 43, as to Count IV.

    **C.**    **Mass. Gen. L. c. 175, § 112C Claims (Counts II and V)**

        *1.*    *Mass. Gen. L. c. 175 § 112C Claim Against Zurich (Count II)*

Zurich argues that Costa has failed to state a claim under Mass. Gen. L. c. 175, § 112C. Mass. Gen. L. c. 175, § 112C provides that "[a]ny insurer doing business in the commonwealth shall reveal to an injured party making claim against an insured, the amount of the limits of said insured's liability coverage, upon receiving a request in writing for such information from the injured party or his attorney" within thirty days.  Mass. Gen. L. c. 175, § 112C.  Zurich argues that Costa fails to allege that she issued a written demand to Zurich requesting information about its coverage limits.  D. 35 at 13.  Costa's counsel, Alexander Asermely ("Asermely") submitted an affidavit, attached to the complaint, declaring that on April 24, 2019, pursuant to Mass. Gen. L. c. 175, § 112C, he contacted counsel for Maxim "to request certain insurance information . . . including the amounts of Maxim's insurance coverage and the identity of Maxim's insurer(s)." D. 26-7 ¶ 2.  Asermely stated that on June 9, 2021, Maxim identified Zurich as one of its insurers. D. 26-7 ¶ 11.  Costa, however, fails to allege that, upon discovering that Zurich was one of Maxim's insurers, she sent a Mass. Gen. L. c. 175, § 112C request to Zurich in writing requesting information about its coverage, as required by the statute.  See Aquino, 416 F. Supp. 2d at 185 (reflecting that the statutory request for insurance coverage information was sent to insurer that

14

then delegated it to an insurer adjuster); Boyle v. Zurich Am. Ins. Co., 472 Mass. 649, 652 (2015) (reflecting that statutory request for insurance coverage information was sent to insurer).

Costa, under an agency theory, argues that by submitting the Mass. Gen. L. c. 175, § 112C request to Maxim's counsel, she also issued the demand to Zurich because she claims Zurich provided Maxim's counsel with actual and apparent authority to act on its behalf. See D. 49 at 7-8. "An agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control." Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 742 (2000) (citations omitted). Costa has not alleged that Maxim's counsel served as Zurich's legal counsel, that Maxim's counsel had a legal duty to Zurich or that the relationship between the two would subject Maxim's counsel to Zurich's control. As the complaint and attached exhibits reflect, Costa was aware, at some point, that Zurich was represented by counsel different from Maxim's counsel. See D. 26-1 (Costa's 93A demand to Zurich and National Fire addressed to attorneys Scartlett Rajbanshi ("Rajbanshi") and Dan Rabinovitz ("Rabinovitz")); D. 26-2 (Zurich's response to Costa's 93A demand sent by Rajbanshi, stating "[a]s you know, this office represents Zurich"); D. 26-7 ¶ 2 (noting that counsel for Maxim was attorney Frank Deasey). Costa has thus failed to allege plausibly that submitting the Mass. Gen. L. c. 175, § 112C to Maxim's counsel was the legal equivalent of submitting it to Zurich.

Moreover, Zurich argues that Costa's claim "rests on the misplaced legal conclusion that the conduct of defense counsel for Zurich's insured may be imputed directly to Zurich." D. 35 at 14. As alleged, Maxim refused to reveal the identity of its insurers, including Zurich, until September 2021 despite repeated requests for same and failed to produce its full insurance policy. D. 26 ¶¶ 39-40; D. 26-7. Zurich, however, cannot be held liable for the conduct of Maxim's

defense counsel. See Aquino, 416 F. Supp. 2d at 197 (stating that "an attorney such as [the insured's counsel] is an independent contractor with separate and distinct obligations to its client, the insured, and [the insurer] cannot be held vicariously responsible for any errors of judgment by the attorney"); Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 406-10 (2003) (concluding that the insurer, despite having retained the attorney to represent its insured, was not vicariously liable for the negligence of the insured's counsel where the insurer did not interfere with that attorney's representation of the insured nor exercised control over the representation). Because Costa has failed to allege a claim under Mass. Gen. L. c. 175, § 112C against Zurich, the Court allows Zurich's motion to dismiss, D. 34, as to Count II.

### 2.   Mass Gen. L. c. 175, § 112C Claim Against National Fire (Count V)

Like Zurich's argument for dismissing Count II, National Fire argues that Costa's Mass. Gen. L. c. 175, § 112 claim against it, Count V, should be dismissed because Costa does not allege that she ever requested information about its coverage limits from National Fire. D. 44 at 13. In his affidavit, Asermely asserts that on April 24, 2019, he contacted Maxim's counsel for insurance information pursuant to Mass. Gen. L. c. 175, § 112. D. 26-7 at 3. Costa claims that despite repeatedly requesting the identity of Maxim's insurers from Maxim's counsel, she did not receive such information until July 9, 2021 when Maxim identified National Fire in an interrogatory response. D. 26-7 ¶ 13. Despite this eventual disclosure, Costa does not allege having requested information about coverage limits from National Fire pursuant to Mass. Gen. L. c. 175, § 112, as required by the statute.

Although Costa attempts to argue that it sought such information from National Fire through its Mass. Gen. L. c. 175, § 112 demand of Maxim's counsel, Costa has failed to allege that an agency relationship exists between Maxim's counsel and National Fire. Here too, the complaint and attached exhibits reflect that Costa was aware, at some point, that National Fire was

16

represented by counsel different from Maxim's counsel. See D. 26-1 (Costa's 93A demand to Zurich and National Fire addressed to attorneys Rajbanshi and Dan Rabinovitz); D. 26-9 (National Fire's response to Costa's 93A demand sent by Rabinovitz). National Fire, like Zurich, contends that Maxim's alleged misconduct cannot be imputed onto it because Maxim's counsel never represented National Fire. D. 44 at 14. For the same reasons stated previously, the Mass. Gen. L. c. 175, § 112 claim against National Fire is not plausibly alleged, see Aquino, 416 F. Supp. 2d at 197; Herbert A. Sullivan, Inc., 439 Mass. at 406-10, and, accordingly, the Court allows National Fire's motion to dismiss, D. 43, as to Count V.

### D. Breach of Contract Claims (Counts III and VI)

Zurich and National Fire seek dismissal of Costa's breach of contract claims. To state a claim for breach of contract, Costa must allege that "(1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013) (citing Massachusetts law). Assuming *arguendo* that there was a valid contract to which Costa, Zurich and National Fire were parties, see D. 35 at 16, the breach of contract claim fails as to the requisite element of breach. Costa alleges the following as the contract between the parties:

> My client will accept your last offer of $7,250,000 to settle the claims against Maxim, excluding all claims against Maxim's insurers under c. 93A/176D, after the court's decision on our motion for sanctions, scheduled for hearing on June 30, 2023, arising out of the subpoenas to Maxim's insurers Zurich and National Fire. As part of the general release of Maxim, we will agree that any and all sanctions that enter against Maxim will be enforced only against Maxim's insurer(s).

Id. ¶¶ 30, 64; D. 26-3 at 2. Costa alleges that, under this Agreement to Settle, the parties had agreed that (1) "the underlying Sanctions Motion could proceed to ruling," (2) "thereafter, [Costa] would release Maxim in exchange for the payment of an amount certain," (3) "[t]he insurers would

17

also be responsible for any monetary sanctions awarded against Maxim in the Sanctions Motion," and (4) "[t]he Agreement to Settle did not resolve [Costa's] claims against the insurers." D. 26 ¶¶ 44, 78.

Costa alleges that National Fire and Zurich breached the agreement by (1) "[i]nstructing Maxim's counsel to misrepresent to the court in the underlying action that the parties had already settled thereby obviating the need for a hearing on the sanctions motion," (2) staying "silent while the nature of the Agreement to Settle with [Costa] was misrepresented to the court" and (3) providing "actual or apparent authority to Maxim's counsel to make misrepresentations on their behalf to the court." D. 26 ¶¶ 45, 79. Even accepting Costa's allegation that National Fire and Zurich instructed Maxim's counsel to represent to the court that the parties had settled as true, the alleged Agreement to Settle did not bar the parties from disclosing to the court that they had reached such agreement. National Fire and Zurich's alleged failure to speak up when Maxim's counsel allegedly misrepresented the nature of the agreement is likewise not a breach of any express term of the agreement. While this alleged misrepresentation (i.e., that the parties had settled when, in fact, they had only agreed to settle in the near future) may be actionable under another cause of action, the Court concludes that given the terms of the agreement in this instance, Costa has not alleged a claim for breach of contract. Accordingly, the Court allows the motion as to Count III and VI.

### E. Zurich's Motion to Stay the Action

As alternative relief in its motion to dismiss, Zurich seeks to stay this action pending resolution of the Underlying Lawsuit. D. 34 at 1. Having reviewed the docket in the Underlying Lawsuit, Melanie Costa v. Maxim Crane Works, LP et al., No. 2081-cv-00564 (Mass. Super. Ct.), the Court understands that, as of December 14, 2023, the Underlying Lawsuit is resolved. Accordingly, Zurich's motion to stay is denied as moot.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Hartford's motion to dismiss, D. 27. The Court ALLOWS Zurich's motion to dismiss as to Counts II and III, D. 34, but DENIES it as to Count I. The Court ALLOWS National Fire's motion to dismiss, D. 43, as to all claims.

**So Ordered.**

/s Denise J. Casper
United States District Judge
